THE STATE OF NEW JERSEY, PLAINTIFF, v.
NEIL J. LUCAS, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)

Decided November 9, 1978.

58

60

*Mr. Jon Steiger* assigned Public Defender for defendant (*Mr. William J. Gearty,* Monmouth County Public Defender, attorney).

*Mr. Kenneth Fortier,* Assistant Prosecutor, for the State (*Mr. Alexander D. Lehrer,* Monmouth County Prosecutor, attorney).

McGANN, J. S. C. On October 26, 1973 defendant was sentenced by this court to consecutive indeterminate terms on three counts of obtaining money under false pretenses. He was given credit for 45 days spent in jail awaiting trial and sentence. Each of the charges involved a scheme to obtain money from banks through manipulation of travelers checks. Shortly before this sentence defendant had been sentenced by a municipal court in Essex County to a one-year probationary term on a charge of issuing two worthless checks.

When received at the Youth Correction and Reception Center at Yardville, the three indeterminate consecutive sentences (having a statutory maximum of three years each) were aggregated by classification authorities into a nine-year possible maximum term. On November 30, 1973 defendant was sentenced by another judge in this county, on similar charges of obtaining money by false pretenses to three indeterminate terms concurrent with each other and concurrent with the sentence previously imposed by this court. In December 1973 he was sentenced on similar charges by the Mercer County Court to two indeterminate terms concurrent with each other and concurrent with the sentence previously imposed by this court. On September 6, 1974 he was paroled under all of those sentences. The maximum time for parole supervision was considered to be the unserved balance of

the aggregated nine-year maximum, *i. e.,* a maximum parole date to expire September 10, 1982.

Because of a pending extradition warrant signed by Governor Cahill based on charges pending in the State of Nevada, defendant was arrested in October 1974. After exhaustion of all remedies in connection with resisting extradition, he was transferred to Nevada on November 10, 1975. *In re Lucas,* 136 *N. J. Super.* 24 (Law Div. 1975), aff'd 136 *N. J. Super.* 460 (App. Div. 1975), certif. den. 69 *N. J.* 378 (1976). Although the Nevada charges were eventually dismissed, he was arrested in Nevada as a New Jersey parole violator in April 1977 and released there; then arrested as a parole violator in Georgia on May 9, 1977 and incarcerated in Bordentown. Thereafter he was reinstated on parole on October 7, 1977.

In April 1978 he was again arrested and incarcerated as a parole violator because of failure to report as directed, and again reinstated on parole in June 1978.

In early September 1978 defendant was arrested on a number of disorderly persons offenses. Those charges led to his rearrest as a parole violator on September 8, 1978. He has been at Yardville since.

Lucas' basic contention is that his maximum parole expiration date was improperly set for 1982; that his parole supervision should have terminated long prior to the present, and that his incarceration as a parole violator is consequently illegal. He and his assigned counsel advance the following arguments in support of that contention:

1. It was improper to aggregate, without his consent, the three consecutive indeterminate sentences into a nine-year term for the purpose of setting a maximum parole release date.

2. The release on parole after serving part of the first indeterminate sentence precludes his being considered a parole violator based on an incident which occurred after the expiration of the maximum (three-year) time which

could have been served on the last of the three consecutive indeterminate sentences.

3. To hold defendant to a lengthy term of parole supervision based on a now-abandoned policy of aggregating indeterminate consecutive sentences is fundamentally unfair and violates a basic concept of due process.

4. By issuing the extradition arrest warrant the Governor impliedly pardoned Lucas from the balance of any period of parole supervision.

■ Defendant errs in his statement that the Board of Managers of the Youth Correctional Institution Complex, through its Classification Committee. does not have the power to aggregate consecutive indeterminate sentences for parole purposes. The applicable statute is *N. J. S. A.* 30:4–148, which provides as follows:

> The courts in sentencing to the Youth Correctional Institution Complex shall not fix or limit the duration of sentence, but the time which any such person shall serve in confinement *or on parole* shall not in any case exceed 5 years or the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, if such maximum be less than 5 years; provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than 5 years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed. The term may be terminated by the board of managers in accordance with its rules and regulations formally adopted. [Emphasis supplied]

The consecutive indeterminate sentence concept is a viable one. "The statute before us [*N. J. S. A.* 30:4–148] contains no restrictive provision against consecutive reformatory sentences; had the Legislature so intended, it could have explicitly so provided." *State v. Horton*, 45 *N. J. Super.* 44, 48 (App. Div. 1957). Although such sentence is to be the exception rather than the rule, it is a legally valid sentence — one of the obvious purposes of which is the desire of the sentencing judge to provide "an increase in the maximum term for which a defendant can be held * * * should

he violate his parole after release." *State v. Carroll*, 66 *N. J.* 558, 562 (1975). Essential to the decision in *Carroll* was our Supreme Court's implicit approval of the concept of aggregating the possible maximum under consecutive indeterminate sentences for parole purposes. Implicit approval of the same concept underlies the reasoning of the court in *State v. Prewitt*, 127 *N. J. Super.* 560 (App. Div. 1974), where the court, speaking of consecutive indeterminate terms imposed on the defendant said (p. 564) that "Defendant was thus sentenced to confinement within the Youth Complex to consecutive indeterminate terms aggregating 21 years."

▇ Defendant argues that the Attorney General has taken the position that consecutive indeterminate sentences may not be aggregated for purposes of determining maximum parole supervision and points to Attorney General's Formal Opinion, 1977, No. 8, as supportive thereof. A reading of that opinion demonstrates that it has no application to the issue raised here but rather deals with aggregation of minimum-maximum sentences with indeterminate terms.

▇ Defendant's argument that aggregation was impermissible without his consent also fails. Language such as "with the consent of the prisoner" which appears in *N. J. S. A.* 30:4-123.10 (see also *N. J. A. C.* 10:35-57.7 and the predecessor standard of the Division of Correction and Parole, 816.277) applies only to minimum-maximum State Prison sentences.

▇ As previously stated, defendant was paroled under the original sentence imposed by this court on September 6, 1974. His parole certificate states, in part, that "said parole to be subject to the terms, conditions and limitations annexed hereto and made a part hereof. This parole shall not be fully effective until said terms, conditions and limitations are accepted without reservation by the parolee by his signature affixed hereto * * *." The first of those terms and conditions (to which defendant affixed his signature on August 30, 1974) was this:

1. While on parole, you shall continue to be in the legal custody of the Chief Executive Officer of this Institution, until the maximum term of your sentence has expired or until sooner discharge from parole.

For the reasons set forth above, that maximum sentence was a total of nine years.[1] By accepting parole on that condition defendant removed the underpinning from the legal argument he now makes seeking to show that parole terminated for him on September 6, 1977 — at the maximum. That argument is based on a literal reading of *N. J. A. C.* 10:35-57.4(b) and (c), which provides:

(b) When inmates are serving consecutive indeterminate sentences, each sentence is handled separately and the sentence imposed first is served first. If the commitment papers do not indicate the indictment numbers or give any other indication of the order in which the sentences should be served, supplemental advices are secured from the clerk of the court imposing sentence.
(c) To terminate the first sentence so that the second and succeeding sentences may be served, it is necessary to parole on the first sentence. This can be done any time after commitment. Upon such parole, the second sentence commences. If there are more than two consecutive sentences, it is necessary to parole on all but the last one, if the board of trustees wants the final sentence to commence.

From that regulation defendant argues that in paroling him on September 6, 1974, the Board of Manager's terminated the first of three consecutive indeterminate terms, commenced and immediately terminated the second such term by granting him parole, and then commenced his third term — the maximum parole supervision of which must have expired on September 6, 1977 — three years later.

There are two difficulties with that analysis. To interpret the regulation in the manner suggested by defendant would

---

[1] *N. J. A. C.* 10:33-4.2 provides that parole may be terminated upon the completion of two years of satisfactory adjustment.

be to render ineffective the concept of aggregation of indeterminate terms for maximum parole supervision purposes, permitted by *N. J. S. A.* 30:4-148 as definitively interpreted by our Supreme Court in *State v. Carroll, supra.*[2] Only legislative action can attain the result argued by defendant.

Properly read, however, the regulation is valid within the existing legislative framework as authoritatively interpreted. There is a clear distinction between three consecutive indeterminate terms imposed as part of one sentence and three indeterminate term sentences imposed consecutively one to the other. For example, had defendant been sentenced first by the Monmouth County Court to an indeterminate term (with a three-year maximum), then afterwards by the Mercer County Court to an indeterminate term consecutive to the Monmouth County sentence, and still later by the Essex County Court to an indeterminate term consecutive with those previously imposed by the Mercer and Monmouth County Courts, the interpretation urged by defendant would apply. However, for the reasons expressed above the regulations may not be interpreted to apply to three consecutive indeterminate terms imposed as part of one judgment of conviction and sentence.

At the hearing on this application defendant called David J. Anderson, the present Supervisor of Classification at the Youth Reception and Correction Center. Through him he introduced a memorandum dated May 23, 1974 from Thomas F. Lynch, then Acting Superintendent of the Center, directed to (among others) all members of the Classification Committee. It reads as follows:

---

[2] *Carroll* was decided on March 4, 1975. The regulation was made part of the *Administrative Code* on June 30, 1974 and had existed as a standard for computing duration of sentences promulgated by the Division of Correction and Parole on February 1, 1969.

Effective immediately we will end the practice of aggregating indeterminate consecutive sentences since we have no legal grounds for so doing. Consecutive sentences will now revert to our former method of handling them. This is the same as we are now doing with consecutive sentences received at different times and not aggregated. A man will need to complete his first sentence before he begins time on his second sentence.

Generally this should not affect his full minimum, in-and-out, etc. if the consecutive sentence is of a less serious nature or the same as the present sentence. Full minimum, in-and-out, etc, may be granted if the man is given some indication of how much time he will be receiving on the consecutive sentences so that he does not feel compelled to attempt to escape. If you have any questions, please feel free to call upon me.

The memorandum may be read to support defendant's argument. If it be so read, it can only indicate that Superintendent Lynch was wrong in attempting, by fiat, to change existing law. It may also be read consistent with the interpretation supporting validity of the regulation as set forth above.

██ It must be kept in mind that the precise issue here is aggregation of indeterminate consecutive terms *for the purpose of setting a maximum time during which defendant may be under parole supervision.* Not at issue is aggregation of consecutive indeterminate terms *for the purpose of determining minimum time to be served.* Defendant does not complain of the actual time he spent in the correctional complex; indeed, he could not, for on all of the charges for which sentenced, he spent just about one year in Yardville. His arguments based on *N. J. A. C.* 10:35–57.4(b) and (c) and the memorandum of Superintendent Lynch can have merit, if at all, only as they bear on the length of time he was required to spend in the institution, but not on the possible parole maximum. There was testimony from Anderson that consecutive indeterminate terms are not presently aggregated. I understand that testimony to refer to computation of time to be spent in the institution prior to parole release — but not as bearing on the maximum parole supervision date. That procedure accords with

*Carroll, supra,* in that consecutive indeterminate terms may be imposed by a judge to alert the Board of Managers that the offender should be carefully evaluated prior to parole release but at the same time allowing the judiciary to determine the length of parole supervision. Defendant does not demonstrate any unfair treatment in this latter sense which deprives him of a constitutionally guaranteed right.

Lastly, defendant argues that by signing the rendition warrant for his arrest and removal to Nevada, Governor Cahill impliedly exercised his executive powers of pardon or commutation. The argument is frivolous. Defendant was indicted on the instant charges on February 6, 1973. His not guilty plea was entered April 27, 1973. He was arrested here on the Nevada charges on May 8, 1973. Governor Cahill signed the rendition warrant on May 31, 1973. That act could not have been a commutation of the sentence imposed by this court on the following October 26, 1973. Nor can it be said that the Governor thereby pardoned defendant of the charges for which he had been indicted in February. Had that been so it would have been a complete defense to be raised at or prior to the trial. It was not. Governor Cahill's act was ministerial only and compelled by the mandate of the United States Constitution. *In re Lucas, supra.*

For the foregoing reasons the application for post-conviction relief is denied.